```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE MIDDLE DISTRICT OF GEORGIA
                    COLUMBUS DIVISION


NATIONWIDE JEWELRY & PAWN, INC.   *

         Petitioner,              *

vs.                               *
                                     CASE NO. 4:05-CV-130 (CDL)
THE UNITED STATES OF AMERICA,     *
BUREAU OF ALCOHOL, TOBACCO,
FIREARMS AND EXPLOSIVES           *

         Respondent               *
```

O R D E R

Presently pending before the Court are Respondent's Motion for Summary Judgment and Petitioner's related Motion to Strike Evidence. In its Motion for Summary Judgment, The Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") contends that no genuine issues of material fact exist to be tried and that its revocation of Petitioner's firearm dealers license should be affirmed as a matter of law. Petitioner responds that certain evidence relied upon by ATF in its revocation decision constitutes inadmissible hearsay and should not be considered by the Court in its decision on Respondent's Motion for Summary Judgment. Petitioner further contends that summary judgment is not appropriate due to the existence of genuine issues of material fact regarding whether its violations of federal firearms laws were willful. For the following reasons, Petitioner's Motion to Strike Evidence (Doc. 15) is denied, and Respondent's Motion for Summary Judgment (Doc. 6) is granted.

BACKGROUND

The following facts are undisputed. Brothers Johnnie and David Moore operate a retail business and pawnshop under the name of Nationwide Jewelry & Pawn, Inc. ("Nationwide"). Johnnie Moore is the company's president and general manager, and his brother, David Moore, is currently serving as the chairman and C.E.O. Approximately eighty percent of Nationwide's business relates to firearms. From its inception, Petitioner has been licensed as a Federal Firearms Licensee ("FFL") under the Gun Control Act of 1968, 18 U.S.C. §§ 921-931 ("GCA"). An FFL is required to comply with various record keeping requirements, and a willful violation of those requirements will authorize ATF to revoke the license. *See id.* at § 923(e) (hereinafter "GCA").

On May 13, 2002, ATF Investigator Brenda Payton ("Payton") visited Nationwide's place of business for the purpose of conducting a firearms compliance investigation. Payton's review led her to conclude that Nationwide had failed to comply with numerous record keeping requirements. Investigator Payton prepared a detailed "Report of Violations," a copy of which she provided to David Moore on July 18, 2002. In addition, Johnnie Moore received a "Warning Letter" on August 26, 2002 which outlined the alleged violations and clearly explained that a federal firearms license "is conditioned upon [] compliance with Federal firearms laws and regulations" and

that "[r]epeat violations of those listed [would] be viewed as willful" and result in revocation of Nationwide's license.

Approximately one year later, ATF sent another investigator, Edward McKita ("McKita"), to conduct a second records inspection. McKita's investigation also revealed numerous GCA violations, including many of the same offenses for which Nationwide had been cited in 2002.[1]  As a result, on September 9, 2004, ATF advised Nationwide that it was revoking its license as a result of "willful" violations of the GCA.

Nationwide promptly responded by requesting a review hearing, which was held on December 2, 2004.  Nationwide appeared without counsel, but Johnnie Moore spoke on its behalf as the sole corporate officer.  Harry Foster ("Foster"), an attorney with the Assistant Chief Counsel's Office, ATF Atlanta, represented ATF.  ATF presented a number of exhibits, including the documents from the 2002

---

[1]The parties do not dispute that the following alleged violations appear in both the 2002 Report of Violations (Resp't Mem. Supp. Mot. Summ. J., Govt. Ex. 8 to Attach. B.) and the 2003 Notice of Revocation of License (Resp't Mem. Supp. Mot. Summ. J., Govt. Ex. 2 to Attach. B.):
   (1)  Failure to report multiple handgun sales in violation of 27 C.F.R. § 178.126(a);
   (2)  Failure to obtain completed ATF Forms 4473 prior to firearm transfers in violation of 27 C.F.R. §§ 178.121 and 178.124; and
   (3)  Failure to maintain proper acquisition and disposition records in violation of 18 U.S.C. § 922(m) and 27 C.F.R. §§ 178.22(a)(3) and 178.125(e).
It is also undisputed that Nationwide received copies of the 2002 Report of Violations and the accompanying Warning Letter.

inspection.[2] ATF also presented testimony from Inspector McKita, who identified and explained each item of evidence. The hearing officer ultimately admitted each of the documents into evidence. Foster then questioned McKita about the 2003 inspection, having him specifically identify each of Nationwide's alleged violations. Moore repeatedly acknowledged that the violations had occurred, but provided multiple excuses and explanations to dispute that they had been "willfully" committed.[3]

After considering the evidence, the hearing officer concluded that Nationwide's violations were "willful" as alleged. The Atlanta ATF Director of Industry Operations ("DIO") adopted his decision. When the DIO issued a "Final Notice of Revocation" on September 22, 2004, Nationwide filed the pending petition for *de novo* review, submitting that ATF had erred in revoking its license because it failed to establish that Nationwide's GCA violations were "willful."

## DISCUSSION

**A.  Motion to Strike**

Preliminarily, Nationwide argues that certain exhibits that ATF submitted to the hearing officer are "rank hearsay," should be

---

[2] Foster also produced documents relating to McKita's 2003 investigation, ATF's Notice of Revocation of License, two signed copies of the Federal Firearms Regulations Reference Guide, and a signed copy of an Acknowledgment of ATF Rules and Procedures form. (Hr'g Tr. 5, 6, 14-17.)

[3] The crux of Moore's argument was that all of the alleged violations were nothing more than clerical errors. Though he admitted that "[t]here's no excuse for that[,]" (Hr'g Tr. 74), he continued to assert that mere clerical mistakes should not be considered "willful."

4

stricken from the administrative record, and should not be considered by this Court in its decision on ATF's Motion for Summary Judgment. Specifically, Nationwide challenges the admissibility of (1) the 2002 "Report of Violation" issued by ATF Investigator Payton, (2) the accompanying "Warning Letter" issued by an ATF Area Supervisor, (3) a "Federal Firearms Regulations Reference Guide" signed by an unidentified person, (4) a second "Federal Firearms Regulations Reference Guide" signed by David Moore, and (5) an "Acknowledgment of ATF Rules and Procedures" form signed by Nationwide's former clerical employee, Cindy Young.  Since the Federal Rules of Evidence do not expressly apply to administrative proceedings, *see* Fed. R. Evid. 1101(a), (b) (outlining applicability of rules), the issue of admissibility is governed by the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* ("APA").

    (1) *Admissibility of Hearsay Evidence in Administrative Proceedings*

Section 556(d) of the APA specifically authorizes the presentation and use of any evidence that is not "irrelevant, immaterial, or unduly repetitious."  Though traditional rules of evidence would generally exclude hearsay despite its relevance, it may be used in an administrative proceeding if the evidence possesses sufficient indicia of reliability. *See Richardson v. Perales*, 402 U.S. 389, 402-06, 91 S. Ct. 1420, 1428-30 (1971) (discussing admissibility of hearsay evidence in administrative context); *J.A.M. Builders, Inc. v. Herman*, 233 F.3d 1350, 1354 (11th Cir. 2000)

(recognizing hearsay as admissible evidence in an administrative proceeding if "reliable and credible") (internal citation omitted). In addition, a single item of evidence may be relevant for both hearsay and nonhearsay purposes. *See* Fed. R. Evid. 801(d) (outlining acceptable nonhearsay uses for which hearsay evidence may be admitted). In such a case, the evidence is admissible so long as the "prejudicial hearsay value [does not] overcome[] its probative nonhearsay value . . . ." *United States v. Johnson*, 741 F.2d 1338, 1340 n.2 (11th Cir. 1984).

Accordingly, the sole issue concerning the appropriateness of admitting actual hearsay evidence in an administrative proceeding is whether the evidence is both probative and reliable. The evidentiary value of a disputed piece of evidence depends on (1) whether the hearsay declarant was interested or biased, (2) whether the party opposing the hearsay had access to the information containing the hearsay and could have subpoenaed the declarant, (3) whether the information is inconsistent on its face, and (4) whether courts have recognized the information as inherently reliable. *J.A.M. Builders*, 233 F.3d at 1354.

   (2)   *Hearsay Character of the Disputed Evidence*

Nationwide has challenged the disputed evidence as "rank hearsay." It further asserts that the evidence is unreliable because (1) the declarations contained in the documents were not made under oath, (2) the declarants were not made available as witnesses at the

6

review hearing, and (3) ATF's sole witness, Inspector McKita, did not have firsthand knowledge of the contents of the documents. (*See* Pet'r Br. Supp. Mot. to Strike 3.)

The Federal Rules of Evidence define "hearsay" as a statement "offered . . . to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Thus, the disputed items would qualify as "hearsay" if their value to the fact finder rested upon the fact that they proved the assertions contained in the documents. As such, the 2002 Report of Violations and Warning Letter would constitute hearsay if used to establish that Nationwide had actually violated the listed GCA provisions in 2002. Likewise, the other three documents would be hearsay evidence if offered to establish that Nationwide, through its employees, had acknowledged its awareness of the GCA regulations.

Here, ATF seeks to establish that Nationwide's 2003 GCA violations were "willful" and thereby justify its decision to revoke Nationwide's firearms license. It has not alleged a "purposeful disregard" of the GCA record keeping requirements but instead alleges that Nationwide exhibited "plain indifference" to those requirements by failing to correct deficiencies that were clearly brought to its attention. Since a "plain indifference" violation can only be "willful" if the offending licensee had knowledge of what the rules require, ATF was required to produce evidence tending to establish that Nationwide possessed such knowledge prior to the 2003 inspection.

First, the Court notes that Johnnie Moore has acknowledged Nationwide's awareness of the GCA requirements by admitting that he has "kept abreast and current of federal firearms laws and regulations generally for approximately the past thirty years." (Aff. Johnnie Moore ¶ 4, July 13, 2006.)  Thus, the Court need not strike the signed acknowledgment forms because the fact that they tend to prove is already established.  Second, the 2002 Record of Violations and Warning Letter need not be admitted as hearsay to remain relevant to the "willfulness" issue.  Regardless of whether Nationwide actually violated the GCA in 2002, these documents establish that it was put on notice of ATF's position.  Specifically, they show that Nationwide had prior knowledge of what ATF considered to be its problem areas and that ATF expected Nationwide to focus on compliance in those areas.  In addition, the Warning Letter clearly provided notice that any future violation of the listed provisions would be viewed as "willful" and would result in revocation of Nationwide's license.  Thus, the 2002 Report of Violations and Warning Letter were relevant and admissible for the nonhearsay purpose of establishing Nationwide's prior knowledge. Accordingly, the Court declines to strike these items of evidence from the hearing record and Nationwide's Motion to Strike (Doc. 15) is hereby DENIED.

**B.     Motion for Summary Judgment**

   (1)   *Standard of Review of ATF Action*

Nationwide seeks review under 18 U.S.C. § 923(f)(3), granting an aggrieved party permission to seek *de novo* review of a license denial or revocation. Under this provision, a reviewing court must decide whether ATF was authorized to take the challenged action, and "may consider any evidence submitted by the parties . . . whether or not such evidence was considered at the hearing . . . ." *Id*.

   (2)   *Summary Judgment Standard*

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of showing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Once the moving party has met its burden, the burden shifts to the non-moving party to show that there is a genuine issue of material fact. *Id.* at 324. With respect to a license revocation under the GCA, summary judgment is appropriate where "there is no genuine issue of material fact about whether [a licensee's] continued and repeated failure to comply [with the GCA] was willful." *Willingham Sports, Inc. v. ATF*, 415 F.3d 1274, 1278 (11th Cir. 2005) [hereinafter *Willingham Sports II*].

(3)  *Willfulness of Nationwide's Violations*

The GCA authorizes ATF to revoke the license of any firearms dealer who "willfully" violates any provision of the GCA. 18 U.S.C. § 923(e). For purposes of § 923(d)(1)(c), a "willful" violation includes "a dealer's repeated violations [of the GCA] after it has been informed of the regulations and warned of violations." *Willingham Sports II*, 415 F.3d at 1277. Factors tending to establish "willfulness" as a matter of law include (1) a licensee's proven knowledge of its record keeping obligations, (2) persistent failure "to comply with . . . the same or similar" provisions, and (3) receipt of a warning letter "advising [the licensee] that repeated violations of the regulations could result in the revocation of its license." *Id.*

Applying these factors, the Court finds that ATF has established "willfulness" as a matter of law. First, Johnnie Moore has admitted that he has "kept abreast" of the GCA requirements for approximately 30 years. (Aff. of Johnnie Moore ¶ 4, July 13, 2006.) Second, it is undisputed that Nationwide committed multiple violations of the GCA in 2003 and that many of these violations are identical to those noted on the 2002 investigation documents. Finally, Nationwide has acknowledged that it received the 2002 "Warning Letter" which specifically explained that future violations of the listed provisions would result in a license suspension. Thus, the Court finds that a reasonable fact finder could reach only one conclusion

from the undisputed evidence—that Nationwide's "continued and repeated failure to comply [with the GCA] was willful." *Willingham Sports II*, 415 F.3d at 1278.

The Court rejects Nationwide's contention that summary judgment is inappropriate because "[a]ny errors or mistakes which have been made . . . are, for the most part, readily or easily explainable," (Pet. ¶ 6.), and that the "clerical mistakes . . . do not fall within the category of 'plain indifference' or 'purposeful (intended)' disregard for ATF recordkeeping [sic] regulations." (Pet'r Resp. Resp't Mot. Summ. J. 17.) Assuming each of Nationwide's explanations is plausible, they do not excuse Nationwide's admitted violations of the GCA. Moreover, they do not eliminate the undisputed fact that these violations occurred after Nationwide was formally warned that future violations would result in revocation of its license. Particularly, Nationwide admits that it (1) failed to keep accurate acquisition and disposition records, (2) failed to comply with the multiple sale of handgun provision, and (3) failed to properly complete multiple ATF Forms 4473. Even assuming that Nationwide acted unintentionally, establishing "willfulness" does not require a showing that the licensee had a "bad purpose or evil motive." *Willingham Sports II*, 415 F.3d at 1276. Indeed, ATF has the right to insist on "total compliance [with the GCA] as a condition of retaining the privilege of dealing in firearms." *Willingham Sports,*

*Inc. v. ATF*, 348 F. Supp. 2d 1299, 1309 n.14 (S.D. Ala. 2004) [hereinafter *Willingham Sports I*].

Nationwide suggests that revocation is too harsh a penalty for "mere mistakes in paper work." This "clerical error" defense is an astonishing one given Nationwide's long tenure as a federally licensed firearms dealer. The Supreme Court has specifically noted that a major purpose of the GCA is "to keep firearms away from [] persons Congress classified as potentially irresponsible and dangerous." *Barrett v. United States*, 423 U.S. 212, 218 (1976). Without accurate and meticulous compliance with these "paper work" requirements, the very foundation of this regulatory system would be compromised. Indeed, "[i]f ever there were a statutory scheme where a licensee should be obligated to 'sweat the details,' the [GCA] would appear to fit that bill." *Willingham Sports I*, 348 F. Supp. 2d at 1309 n.14. Nationwide knew what the GCA required, was warned of the consequences of failing to comply, and yet failed to take the warning seriously. ATF had no choice but to revoke its license.

For all of these reasons, the Court finds that no genuine issues of material fact exist to be tried and that Petitioner's failure to comply with the federal firearms laws was willful as a matter of law. Accordingly, ATF's Motion for Summary Judgment (Doc. 6) is hereby GRANTED.

IT IS SO ORDERED, this 12th day of October, 2006.

                                          <u>S/Clay D. Land</u>
                                                 CLAY D. LAND
                                   UNITED STATES DISTRICT JUDGE